NO. 24-3118

---

## IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

---

TAYLOR E. BARLOW, *Plaintiff-Appellant*

*vs.*

TOWN OF COLORADO CITY, ARIZONA*, Defendant-Appellee.*

---

On Appeal from the United States District Court
for the District of Arizona
Hon. Susan M. Brnovich
Case No. CV-23-08506-PCT-SMB

---

## DEFENDANT-APPELLEE'S ANSWERING BRIEF

---

Justin S. Pierce (State Bar #022646)
Alexandra N. Cayton (State Bar #038580)
**PIERCE COLEMAN PLLC**
7730 E. Greenway Road, Suite 105
Scottsdale, AZ 85260
Telephone: (602) 772-5506
Fax: (877) 772-1025
Justin@PierceColeman.com
Alex@PierceColeman.com
*Counsel for Defendant-Appellee*

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................... i

TABLE OF AUTHORITIES ................................................................ iii

INTRODUCTION ...................................................................................1

JURISDICTIONAL STATEMENT .......................................................2

ISSUES PRESENTED............................................................................2

STATEMENT OF THE CASE ...............................................................3

SUMMARY OF THE ARGUMENT .....................................................9

STANDARD OF REVIEW ..................................................................11

ARGUMENT ........................................................................................12

    I.    THE TOWN CANNOT EMPLOY BARLOW AS AN ARIZONA POLICE OFFICER IF HE IS NOT AZPOST CERTIFIED.........................................................................12

    II.    THE TRIAL COURT PROPERLY DISMISSED BARLOW's COMPLAINT BECAUSE IT IS BARRED BY CLAIM PRECLUSION. ...................................................................16

        A.    There Is an Identity of Claims Between Barlow's 2020 Lawsuit and the Current Lawsuit.............................................17

            i.    The two lawsuits arise out of the same transactional nucleus of facts...........................................17

            ii.    The remaining three factors related to an identity of claims further support the conclusion that claim preclusion bars this lawsuit.............................................21

        B.    A Final Judgment on the Merits Was Issued, and There Is Privity Between the Defendants in Barlow's 2020 Lawsuit and the Town...........................................................................24

III.   THIS COURT MAY ALSO AFFIRM THE DISTRICT COURT'S DISMISSAL ON ISSUE PRECLUSION GROUNDS....................................................................29

IV.   BARLOW HAS NOT ESTABLISHED THE MONELL LIABILITY STANDARD. ..............................................31

      A.   The Town Does Not Have a Custom or Policy for Terminating Employees Who are Members of the FLDS Religion. .......................................................32

      B.   Neither Chief Radley Nor Any Other Town Official Is a Final Policymaker; that Authority Resides Solely with Town Council........................................................35

V.   THE DISTRICT COURT CORRECTLY DENIED BARLOW LEAVE TO AMEND........................................................38

CONCLUSION.........................................................................39

STATEMENT OF RELATED CASES ....................................40

CERTIFICATE OF COMPLIANCE........................................41

CERTIFICATE OF SERVICE .................................................42

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                **Page(s)**

*AE ex rel. Hernandez v. Cnty. of Tulare,*

   666 F.3d 631 (9th Cir. 2012)............................................................ 32, 33

*Allen v. McCurry,*

   449 U.S. 90 (1980) ............................................................................ 30

*B & B Hardware, Inc. v. Hargis Indus., Inc.,*

   575 U.S. 138 (2015) .......................................................................... 30

*Barlow v. Arizona Peace Officer Standards & Training Bd.,*

   2020 WL 1274507 (Ariz. Ct. App. Mar. 17, 2020) .................................... 6, 7, 27

*Chadha v. JPMorgan Chase Bank, N.A.,*

   749 F. App'x 636 (9th Cir. 2019) ........................................................ 24

*Costantini v. Trans World Airlines,*

   681 F.2d 1199 (9th Cir. 1982).......................................................... 17, 22

*Dark v. Curry Cnty.,*

   451 F.3d 1078 (9th Cir. 2006).............................................................. 13

*Dougherty v. City of Covina,*

   654 F.3d 892 (9th Cir. 2011)............................................................... 32

*Est. of Strickland v. Nevada Cnty.,*

   69 F.4th 614 (9th Cir. 2023) ................................................................ 38

iii

*Fields v. Palmdale Sch. Dist.*,

   427 F.3d 1197 (9th Cir. 2005)................................................................ 24

*Gemtel Corp. v. Cmty. Redevelopment Agency of City of Los Angeles*,

   23 F.3d 1542 (9th Cir. 1994)................................................................ 11

*Germann v. Dep't of Lab.*,

   206 F. App'x 662 (9th Cir. 2006) ........................................................ 29

*Gillette v. City of Eugene*,

   979 F.2d 1342 (9th Cir. 1992)........................................... 35, 36, 37, 38

*Gordon v. Cnty. of Orange*,

   6 F.4th 961 (9th Cir. 2021) ............................................................ 31, 34

*Harris v. Cnty. of Orange*,

   682 F.3d 1126 (9th Cir. 2012)............................................................. 17

*Hormel v. Helvering*,

   312 U.S. 552 (1941) ............................................................................ 12

*Howard v. City of Coos Bay*,

   871 F.3d 1032 (9th Cir. 2017)....................................................... 19, 20

*In re Dual-Deck Video Cassette Recorder Litig.*,

   1990 WL 126500 (D. Ariz. July 25, 1990) ........................................ 33

*In re VeriFone Sec. Litig.*,

   11 F.3d 865 (9th Cir. 1993)................................................................. 11

*Indep. Towers of Wash. v. Washington*,

    350 F.3d 925 (9th Cir. 2003) ................................................................ 24

*Int'l Union of Operating Engineers-Emps. Const. Indus. Pension, Welfare &*

    *Training Tr. Funds v. Karr*,

    994 F.2d 1426 (9th Cir. 1993) .............................................................. 17

*Lavinia Aircraft Leasing, LLC v. Piper Aircraft Inc.*,

    No. CV-16-02849-PHX-DGC, 2017 WL 1326140, at *3 (D. Ariz. Apr. 11, 2017)

    ........................................................................................................ 34

*Lee v. City of Los Angeles*,

    250 F.3d 668 (9th Cir. 2001) .................................................................. 4

*Lee v. Thornburg Mortg. Home Loans Inc.*,

    2014 WL 4953966 (N.D. Cal. Sept. 29, 2014) ...................................... 26

*Mars, Inc. v. Nippon Conlux Kabushiki-Kaisha*,

    58 F.3d 616 (Fed. Cir. 1995) ................................................................ 25

*McDowell v. Cnty. of Lassen*,

    2023 WL 6611500 (E.D. Cal. Oct. 10, 2023) ......................................... 4

*Monell v. Dep't of Soc. Servs. of City of New York*,

    436 U.S. 658 (1978) ...................................................................... 31, 36

*Mpoyo v. Litton Electro-Optical Sys.*,

    430 F.3d 985 (9th Cir. 2005) .......................................................... 17, 21

*New Hampshire v. Maine*,

    532 U.S. 742 (2001) ......................................................................... 30, 31

*Padgett v. Wright*,

    587 F.3d 983 (9th Cir. 2009) ................................................................. 38

*Prime Healthcare Servs., Inc. v. Servs. Emps. Int'l Union*,

    97 F. Supp. 3d 1169 (S.D. Cal. 2015) .................................................... 23

*Santa Monica Food Not Bombs v. City of Santa Monica*,

    450 F.3d 1022, 1025 (9th Cir. 2006) ........................................................ 4

*Save Bull Trout v. Williams*,

    51 F.4th 1101 (9th Cir. 2022) ......................................................... 16, 21

*Shaw v. Hahn*,

    56 F.3d 1128 (9th Cir. 1995) ................................................................. 25

*Singleton v. Wulff*,

    428 U.S. 106 (1976) ....................................................................... 12, 13

*Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*,

    322 F.3d 1064 (9th Cir. 2003) ............................................................... 25

*Universal Mortg. Co. v. Prudential Ins. Co.*,

    799 F.2d 458 (9th Cir. 1986) ................................................................. 38

*United States v. Raygoza-Garcia*,

    902 F.3d 994 (9th Cir. 2018) ................................................................... 4

*United States v. ITT Rayonier, Inc.*,

   627 F.2d 996 (9th Cir. 1980)......................................................... 25

*United States v. Town of Colorado City, Arizona*,

   2017 WL 1384353 (D. Ariz. Apr. 18, 2017) ....................................... 34

**Statutes**

42 U.S.C. §1985(3) ............................................................... 7, 8, 9, 19, 37

42 U.S.C. § 1983 .................................... 7, 8, 9, 10, 19, 31, 35, 36, 37

A.R.S. § 41-1823(B) ............................................... 4, 14, 15, 18, 21

**Regulations**

Ariz. Admin. Code R13-4-103.................................................. 18

Ariz. Admin. Code. R13-4-105................................................. 5, 6

Ariz. Admin. Code sections R13-4-109................................... 27

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ............................. 11

Federal Rule of Civil Procedure 32 ...................................... 41

Ninth Circuit Rule 28 .............................................................40

## **INTRODUCTION**

Appellant's lawsuit cannot proceed as a matter of law because his failure to receive Arizona peace officer certification meant that he could not legally serve as a police officer in the State of Arizona. Appellant was a police officer for the Colorado City Marshal's Office (the "Marshal's Office"), serving both Colorado City, Arizona, and Hilldale, Utah. To be a police officer for the Marshal's Office, the Town's personnel rules require officers to have peace officer certification in Arizona and Utah. However, Appellant was only certified in Utah upon hire.

Soon after Appellant was hired, he applied for peace officer certification in Arizona through the Arizona Peace Officer Standards and Training Board ("AZPOST"). Unfortunately for Appellant, AZPOST denied his application, which Appellant appealed.

In a show of goodwill, the Marshal's Office allowed Appellant to remain employed in a limited capacity while he appealed the denial of his certification. Appellant made extensive efforts to appeal AZPOST's denial to the Arizona Court of Appeals and filed a separate lawsuit against AZPOST in federal court. However, the courts did not agree that AZPOST improperly denied Appellant certification, and he lost every appeal (in the Arizona courts and at the United States Court of Appeals for the Ninth Circuit). This lawsuit is the *third* attempt to seek retribution for AZPOST's denial, this time by suing his employer for alleged wrongful

1

termination.

Because this lawsuit is legally untenable, the Town of Colorado City, Arizona (the "Town" or "Appellee") filed a Motion to Dismiss on the grounds of claim preclusion, issue preclusion, and Appellant's failure to satisfy the *Monell* liability standard for liability pursuant to 42 U.S.C. § 1983. The District Court agreed, dismissing Appellant's lawsuit based on claim preclusion and *Monell*. The District Court aptly noted, "[a]fter all, repetitive litigation is not to be allowed simply because the claim bears a new garb." [Excerpts of Record ("ER")_13 (internal citation omitted)]. This Court should uphold the District Court's dismissal.

## JURISDICTIONAL STATEMENT

Appellee, Town of Colorado City, Arizona, agrees with Appellant's Jurisdictional Statement except for Appellant's contention that Appellee wrongfully terminated him.

## ISSUES PRESENTED

1. Whether the District Court correctly determined that the Town satisfied all elements of claim preclusion, thereby warranting dismissal of this lawsuit.

2. Whether issue preclusion bars this lawsuit because the central issue—the denial of the Appellant's peace officer certification—has already been extensively litigated.

3. Whether the District Court correctly determined that the Town could not be held liable under Section 1983 because Appellant failed to plead sufficient plausible facts to establish *Monell* liability, thereby warranting dismissal of this lawsuit.

4. Whether the District Court correctly found that Appellant could not amend his Complaint, as his claims could not be cured by the inclusion of additional facts.

**STATEMENT OF THE CASE**

This is an employment case involving Appellant Taylor E. Barlow ("Barlow"), a former police officer with the Marshal's Office, whose dismissal from the Town resulted from the AZPOST's denial of Barlow's application for peace officer certification.

The Marshal's Office (now renamed Colorado City/Hildale City Police Department) is a dual-certified law enforcement agency serving both Colorado City, Arizona and Hilldale, Utah. [ER_6, 169 ¶ 24] The Marshal's Office is a small agency comprising approximately ten sworn law enforcement officers. [ER_73] Despite providing service to Utah, the Marshal's Office is located in Arizona. [ER_169 ¶ 24]

Because the Marshal's Office is dual-certified, all officers must be Peace Officer Standard Training ("POST") certified in both states. [ER_7; A.R.S. § 41-

3

1823(B) ("no person may exercise the authority or perform the duties of a peace officer unless he is certified by [AZPOST]"); [*see also* SER_9[1] (Police officer "[t]ransfers will be required to certify with Utah **and** Arizona POST within six months of employment offer") (emphasis added)].

In August 2016, the Marshal's Office hired Barlow as a police officer. [ER_6, 169 ¶ 24]  When Barlow was hired, he was certified as a peace officer in Utah, but not in Arizona. [ER_6–7, 169 ¶ 23, 25]  It is common practice for the Marshal's Office to hire officers with certification from only one state, provided they can apply for certification in the other state. [*See* ER_90]  Soon after Barlow was hired, the Marshal's Office, on behalf of Barlow, applied for AZPOST certification. [ER_7, 169 ¶ 25]  Barlow's initial application was rescinded because the background report and medical examination were missing. [ER_169 ¶ 27]  The Marshal's Office then submitted a new application for Barlow, including the previously missing information. [*Id.* at ¶ 28]

---

[1] The Court may take judicial notice of the Town's Personnel Rules as they are a public record and not subject to reasonable dispute. *See Lee v. City of Los Angeles,* 250 F.3d 668, 689 (9th Cir. 2001) (explaining that a court may judicially notice matters of public record unless the matter is a fact subject to reasonable dispute); *United States v. Raygoza-Garcia*, 902 F.3d 994, 1001 (9th Cir. 2018) ("A court may take judicial notice of undisputed matters of public record."); *McDowell v. Cnty. of Lassen*, No. 223CV01007DJCDMC, 2023 WL 6611500, at *3 (E.D. Cal. Oct. 10, 2023) (taking judicial notice of a county's personnel rules); *Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1025 n.2 (9th Cir. 2006) (taking judicial notice of a city ordinance and other publicly available city records).

According to AZPOST regulations, an applicant must meet "minimum qualifications before being appointed" a peace officer in Arizona. Ariz. Admin. Code. R13-4-105(A). Those requirements, among others, include "[n]ot have been convicted of a felony or any offense that would be a felony if committed in Arizona" and "[n]ot have illegally… possessed, produced, cultivated, or transported marijuana for sale or sold marijuana[.]" Ariz. Admin. Code R13-4-105(A)(6) & (9). Applicants who fail to meet these requirements *cannot* receive peace officer certification *unless* a waiver applies. *See* Ariz. Admin. Code R13-4-105(c) or (d) (emphasis added).

As part of the AZPOST certification process, Barlow self-disclosed three disqualifying incidents: "(1) a juvenile felony conviction for burglary and criminal damage committed when he was fourteen years old; (2) a possible theft of a vehicle when he was seventeen years old [potential felony]; and (3) he sold marijuana to his roommate when he was eighteen years old [potential felony]." [ER_7; *see also* ER_169 ¶ 25] AZPOST determined that Barlow's acts violated the Arizona Administrative Code because he failed to satisfy the minimum qualifications for certification: he illegally possessed and sold marijuana, committed a felony, and engaged in conduct that diminished or jeopardized the public trust in law enforcement. [ER_119–120]

Given that these three incidents disqualified Barlow, the Marshal's Office wrote on Barlow's behalf to ask AZPOST to excuse these incidents under the "juvenile indiscretion" exception to Ariz. Admin. Code R13-4-105(D). *Barlow v. Arizona Peace Officer Standards & Training Bd.,* No. 1 CA-CV 19-0378, 2020 WL 1274507, at *1 ¶4 (Ariz. Ct. App. Mar. 17, 2020). AZPOST then considered whether the exception applied, finding that the exception applied to Barlow's two juvenile criminal incidents, but not to the sale of marijuana allegation. [ER_7, 121–122] Consequently, AZPOST denied Barlow's application for peace officer certification. [*Id.*]

Barlow appealed AZPOST's decision. [*See* ER_170 ¶ 30] In an act of goodwill, the Marshal's Office informed Barlow that it would keep him employed while his appeal was pending. [*See* ER_24] Barlow then sought review before an Administrative Law Judge ("ALJ"). [ER_7, 119] The ALJ concluded that the sale of marijuana was an appropriate basis for denying certification because Barlow was over the age of eighteen when he purchased and sold marijuana. [*Id.*; ER_126–127] AZPOST then denied Barlow certification for the second time on May 16, 2018. [ER_108]

Barlow next sought review of the ALJ's findings in the Maricopa County Superior Court ("Superior Court"). [ER_7, 108] In March 2020, the Superior Court affirmed AZPOST's denial of Barlow's certification and noted that the sale

of marijuana "was an automatic bar to certification." _Barlow_, 2020 WL 1274507, at *1 ¶ 6 (internal quotations omitted).  Barlow appealed the Superior Court's decision to the Arizona Court of Appeals, which similarly affirmed the denial. [_Id._]

After several unsuccessful appeals, Barlow decided to take a different approach.  In July 2020, Barlow filed a lawsuit in the United States District Court for the District of Arizona (the "District Court") against defendants Arizona Department of Public Safety ("AZDPS"), AZPOST, and four individual members of AZPOST. [ER_7, 44]  There, Barlow claimed that the defendants denied Barlow certification based on his perceived affiliation with the Fundamentalist Church of the Jesus Christ of Latter-Day Saints ("FLDS"). [ER_58 ¶ 61]  He alleged that the defendants violated his due process and equal protection rights under 42 U.S.C. § 1983 and conspired to deprive him of these rights under 42 U.S.C. §1985(3) (known as the "2020 Lawsuit"). [ER_7–8, 58–64]  The District Court granted the defendants' motion to dismiss and dismissed the matter with prejudice. [ER_116]

Barlow then appealed the District Court's order to the United States Court of Appeals for the Ninth Circuit ("Ninth Circuit"), which affirmed the District Court on February 8, 2022. [ER_157–158]  In the Ninth Circuit's decision, the judges noted that Barlow's claims were also "barred by claim preclusion because all of his claims arose out of the same 'transaction'—the denial of his AZPOST certification." [_Id._ at 156–157]

Once the Marshal's Office discovered that the Ninth Circuit affirmed the District Court's decision and Barlow had exhausted all his opportunities to overturn AZPOST's decision, it terminated Barlow's employment in May 2022. [ER_7–8, 94]

In July 2023, Barlow filed a lawsuit against the Town and Matt Giordano, who was and is currently the Executive Director of AZPOST, claiming that he was wrongfully terminated because of his perceived affiliation with the FLDS religion. [ER_171 ¶ 41]  He *again* alleged violations of his due process and equal protection rights under 42 U.S.C. § 1983 and conspiracy to deprive him of these rights under 42 U.S.C. §1985(3) (known as the "current lawsuit"). [ER_171–177]

On September 15, 2023, the Town filed a Motion to Dismiss Barlow's Complaint because "(1) Plaintiff's Complaint fails to meet the pleading requirements as set forth in *Twombly* and *Iqbal*, (2) Plaintiff has previously litigated these claims in court, and Defendants are in privity with the previous defendants; thus, the doctrine of claim preclusion applies, (3) Issue preclusion bars Plaintiff's claims because the claims and facts alleged have already been litigated and resolved in court, (4) Plaintiff cannot satisfy *Monell* to hold the Town liable for an alleged § 1983 violation, and (5) Because there is no valid § 1983 claim, the Court must dismiss the § 1985 claim." [ER_94–95]

8

On October 27, 2023, Barlow filed a Motion for Voluntary Dismissal of Matt Giordano. [ER_18]  The District Court granted Barlow's Motion. [*Id.*]

On April 16, 2024, the District Court granted the Town's Motion to Dismiss in its entirety, concluding that (1) claim preclusion bars Barlow's lawsuit against the Town, (2) Barlow cannot satisfy the *Monell* liability standard, necessitating dismissal of Counts I and II, and (3) Count III, which does not create an independent cause of action and is related to the already dismissed Counts I & II, must also be dismissed. [ER_11–17]

## SUMMARY OF THE ARGUMENT

I.  To serve as a police officer in Arizona, officers must obtain certification from AZPOST.  The Town, serving both the State of Arizona and the State of Utah, cannot employ Barlow as a police officer in Arizona because he is not certified by AZPOST.

II.  This lawsuit is barred by claim preclusion as all three elements of claim preclusion have been satisfied: (1) there is an identity of claims because the current lawsuit arises out of the same transactional nucleus of facts as Barlow's 2020 lawsuit because both lawsuits relate to the denial of Barlow's AZPOST certification; (2) a final judgment on the merits was issued in the 2020 lawsuit; and (3) the defendants in the 2020 lawsuit and the Town are in privity, sharing a sufficient commonality of interest for two main reasons.

First, AZPOST is the certifying agency responsible for ensuring the Town's officers are qualified. The Town has a vested interest in maintaining high standards for its officers and relies on AZPOST to conduct thorough background reviews. Second, AZPOST's decision on whether to certify Barlow directly impacted Barlow's ability to remain employed with the Town.

III. This lawsuit is barred by issue preclusion because Barlow has already had the opportunity to litigate the issue central to his termination—whether the denial of his certification was proper. Courts have already determined, as a matter of law, that AZPOST had a valid reason to deny Barlow's certification, and without this certification, Barlow cannot serve as a police officer in Arizona.

IV. The trial court properly dismissed all of Barlow's claims because he failed to plausibly plead *Monell* liability, which is required to hold a municipality liable for violating Section 1983. To establish *Monell* liability, a plaintiff must demonstrate that the municipality had a policy or custom of discrimination or that the Town official who terminated the plaintiff had final policy-making authority. Barlow did not plausibly plead sufficient evidence to demonstrate that the Town had a policy or custom to

10

discriminate against members of the FLDS religion, nor that the termination decision maker, Police Chief Robbins Radley, was a final policymaker.

V.   The District Court properly denied Barlow leave to amend because no additional facts could alter the outcome of this case. His termination could not be wrongful as a matter of law because it was legally impermissible for him to be employed by the Town as an Arizona police officer.

This lawsuit is an impermissible attempt to relitigate facts and claims already litigated extensively. The District Court recognized this and properly dismissed Barlow's claims. This Court should affirm the District Court's dismissal.

## STANDARD OF REVIEW

The Court reviews de novo a district court's dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). *In re VeriFone Sec. Litig.*, 11 F.3d 865, 868 (9th Cir. 1993). "Conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Id.* This Court may affirm a district court's dismissal on "any ground supported by the record." *Gemtel Corp. v. Cmty. Redevelopment Agency of City of Los Angeles*, 23 F.3d 1542, 1546 (9th Cir. 1994).

## **ARGUMENT**

### I.    **THE TOWN CANNOT EMPLOY BARLOW AS AN ARIZONA POLICE OFFICER IF HE IS NOT AZPOST CERTIFIED.**

AZPOST and Utah POST certification are required for police officers employed by the Marshal's Office, as they must engage in law enforcement activities in Arizona and Utah.  Given that Barlow cannot be a law enforcement officer in Arizona, the Town argued in its Motion to Dismiss that it had no choice but to terminate Barlow's employment after he was denied AZPOST certification and had exhausted all appeals.  The District Court agreed with the Town and found that "under Arizona law, the Town *cannot* employ Plaintiff as a police officer" if he is not certified by AZPOST. [ER_12]

Barlow contends for the first time on appeal that he could continue working for the Marshal's Office without AZPOST certification by relying on two facts: (1) a Town advertisement for a police officer position indicating that the Town is looking for officers certified in Utah or Arizona, and (2) he worked for the Marshal's Office throughout his entire appeal.  [O.B. at 21]  The Court should decline to consider these arguments because it is a general rule that appellate courts do not consider issues not raised at the trial court level. *Hormel v. Helvering*, 312 U.S. 552, 556 (1941) ("Ordinarily an appellate court does not give consideration to issues not raised below"); *Singleton v. Wulff*, 428 U.S. 106, 120 (1976) (Appellate courts do not consider issues not raised below because parties

must be able to "have the opportunity to offer all the evidence they believe relevant to the issues . . . (and) in order that litigants may not be surprised on appeal by final decision there of issues upon which they have had no opportunity to introduce evidence." (internal quotations omitted)).  Notwithstanding this procedural impropriety, if the Court considers Barlow's arguments, these arguments are meritless.

First, the fact that the Town advertises employment opportunities for police officers certified in Utah or Arizona does not mean that Barlow is qualified for the position or that the Town will employ officers with only one certification indefinitely.[2]  The Town's advertisement states that the Town *prefers* police officer applicants to have "[c]urrent Arizona or Utah Peace Officer Certification[.]" [ER_90]  The Town, being a small jurisdiction with a limited pool

---

[2] In Barlow's Complaint, he raised the issue that the Town did not offer him any other position after he was terminated. [ER_171 ¶ 39] This allegation implicitly acknowledges that he was not qualified for the police officer position, as Barlow was concerned about being offered a *different* role within the Town. Nevertheless, as addressed in the Town's Reply in Support of Motion to Dismiss: this allegation is irrelevant to his claims. This is not an Americans with Disabilities Act case where an individual who is no longer qualified for a job due to disability must be given an opportunity to transfer to another open position before terminating the employment. *See, e.g., Dark v. Curry Cnty.*, 451 F.3d 1078, 1089 (9th Cir. 2006) (noting that for disabled employees, a reasonable accommodation may include reassignment to a vacant position). Furthermore, Barlow never applied for any other open position in the Town. [ER_25]

of applicants, must recruit officers broadly. [*See* ER_73]  The Town does not require dual certification at the *application phase* as it stands to reason that most applicants will not be certified in both states.  Once a candidate is hired, the Marshal's Office can begin the certification process for any officer who is not certified in both states.  This is precisely what the Marshal's Office did in Barlow's case.  [ER_7, 169 ¶ 25]

Arizona law unequivocally requires that any individual exercising the "authority" of a police officer in Arizona must be certified by AZPOST. A.R.S. § 41-1823(B).  Therefore, the Marshal's Office could not retain Barlow as an employee under the title "Police Officer" without AZPOST certification.  Holding the title of a Police Officer inherently involves exercising such authority, making AZPOST certification mandatory.  As additional evidence that certification in both Arizona and Utah is required, the Town's Personnel Rules provide that police officer "[t]ransfers will be required to certify with Utah *and* Arizona POST within six months of employment offer." [SER_9 (emphasis added)]

Furthermore, Barlow contends that he is permitted to work for the Marshal's Office as a police officer without AZPOST certification because the agency employed him for approximately four and a half years following the denial of his certification. [O.B. at 21]  The sole basis for his continued employment was the potential success of his appeal, which might have allowed him to obtain

14

AZPOST certification and serve as a police officer in Arizona. [ER_24] During his appeal process, Barlow's role was significantly restricted because he lacked the necessary certification. Throughout his tenure, he never engaged in actual policing in Arizona, as it is illegal to do so without AZPOST certification—an indisputable fact. A.R.S. § 41-1823(B). Apparently, no good deed goes unpunished. This Court (like the District Court) should not hold the Town's accommodation during Barlow's appeal period against it.

For obvious reasons, Barlow did not previously raise his four and a half years of employment with the Marshal's Office after the initial denial of his certification as evidence that his termination was unwarranted. The Town's accommodation to him would seemingly obliterate any suggestion that the Town was out to get him for some illegal, ulterior motive. For that reason, the Town did not address this new argument previously. However, both Barlow's Complaint and the Town's Motion to Dismiss discussed Barlow's tenure with the Marshal's Office. [ER_92, 94 (noting that AZPOST denied Barlow certification in 2017 and he was not terminated until May 2022)] Therefore, the District Court was well aware of this fact and clearly did not consider it significant to the analysis, as reflected in the District Court's conclusion "[re]gardless of the time elapsed between the prior and current case, all of Plaintiff's claims arise from [the] denial [of Barlow's peace officer certification]—not any subsequent alleged wrongful

termination." [ER_12]

Barlow has not and cannot plausibly argue that he could continue working for the Marshal's Office without obtaining AZPOST certification. The Marshal's Office would not continue to employ an individual unable to police the entirety of their jurisdiction. The reality is clear: the Marshal's Office is located in Arizona, where police officers perform policing duties in Arizona and whose officers operate under Arizona law; thus, officers are required to be certified in *Arizona*. The evidence is undisputed that the expectation was always that Barlow would eventually receive AZPOST certification. However, Barlow's certification was denied, and he lost all his appeals. Thus, his employment with the Town naturally ended when his appeal process concluded.

## II. THE TRIAL COURT PROPERLY DISMISSED BARLOW's COMPLAINT BECAUSE IT IS BARRED BY CLAIM PRECLUSION.

The doctrine of *res judicata,* also known as claim preclusion, "bars a party in successive litigation from pursuing claims that were raised or could have been raised in a prior action." <u>Save Bull Trout v. Williams</u>, 51 F.4th 1101, 1107 (9th Cir. 2022) (citation omitted). Claim preclusion "serves to protect against the expense and vexation attending multiple lawsuits, conserve judicial resources, and foster reliance on judicial action by minimizing the possibility of inconsistent decisions." *Id.* (internal quotations omitted). For claim preclusion to apply, there must be "(1)

16

identity of claims; (2) a final judgment on the merits; and (3) the same parties, or privity between the parties." *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012). In this matter, all elements of claim preclusion have been met.

### A. There Is an Identity of Claims Between Barlow's 2020 Lawsuit and the Current Lawsuit.

As to the first element, the Ninth Circuit has adopted a four-factor test to determine whether there is an identity of claims: "(1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts." *Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201–02 (9th Cir. 1982). The four factors are not applied mechanically, and the same transactional nucleus factor is given the most weight. *See id.* at 1202; *Mpoyo v. Litton Electro-Optical Sys.*, 430 F.3d 985, 988 (9th Cir. 2005) ("We have often held the common nucleus criterion to be outcome determinative under the first res judicata element").

### i. The two lawsuits arise out of the same transactional nucleus of facts.

Whether two suits arise out of the same transactional nucleus of facts "depends on whether they are related to the same set of facts and whether they could conveniently be tried together." *Int'l Union of Operating Engineers-Emps.*

_Const. Indus. Pension, Welfare & Training Tr. Funds v. Karr_, 994 F.2d 1426, 1429 (9th Cir. 1993). Barlow's 2020 lawsuit and the current lawsuit are clearly related to the same set of facts: (1) Barlow's employment as a police officer for the Town, (2) his application for AZPOST certification, (3) AZPOST's denial of his application, (4) his subsequent efforts to appeal this denial, and (5) his allegations that his certification was denied due to discrimination based on his perceived affiliation with the FLDS religion. [ER_139–148; ER_169–171] The only new fact in the current lawsuit is that the Town terminated Barlow allegedly based on his perceived affiliation with the FLDS. However, this fact is inextricably related to the facts of the previous lawsuit because Barlow could not remain employed by the Marshal's Office (i.e., an Arizona law enforcement agency) without AZPOST certification. A.R.S. § 41-1823(B); Ariz. Admin. Code R13-4-103(A). Therefore, this new fact is immaterial as a separate matter and is most appropriately considered part of the same transactional nucleus for claim preclusion purposes.

Moreover, the two lawsuits are intricately connected. Barlow claims in the current lawsuit that the Executive Director of AZPOST, Matt Giordano, "directed the Marshal's Office to terminate [Barlow's] employment on May 3, 2022." [ER_170 ¶ 35–36] Barlow essentially alleges that AZPOST, through its executive director, was responsible, at least in part, for his termination from the Town.

Thus, Barlow necessarily believes AZPOST's alleged bias towards him played a key role (if not the only role) in his termination.[3]  This allegation (as unsupported as is) demonstrates that even Barlow understands that the 2020 lawsuit and the current lawsuit are related to the same set of facts.

Not only are the facts related, but so are the claims that have been brought. In Barlow's 2020 lawsuit, he alleged the same claims against those defendants as he now alleges against the Town.  Specifically, in the 2020 litigation, Barlow claimed that the prior defendants violated § 1983 by denying his due process and equal protection rights and similarly violated § 1985(3) through a conspiracy to deprive him of those rights based on his perceived affiliation with the FLDS church.  [ER_7–8, 58–64]  In this litigation, Barlow alleged *identical* claims against the Town.  This lawsuit is Barlow's attempt at refashioning his 2020 lawsuit into a wrongful termination claim against the Town.  This Court should not permit this, as it would be his *third* case arising out of the denial of his AZPOST certification, with only a minor tweak to the claim alleged.

Barlow cites the <u>Howard v. City of Coos Bay</u> case to argue that claim preclusion is inappropriate. [O.B. at 13]  However, *Howard* actually supports the Town's position.  In *Howard*, the Court determined that a second lawsuit against

---

[3] This is further supported by the fact that Barlow originally named Mr. Giordano as a Defendant in this lawsuit.

the same defendant based on similar claims was not barred by claim preclusion. 871 F.3d 1032, 1040 (9th Cir. 2017). The Court reasoned that the plaintiff's retaliation claim in the second lawsuit was based on the defendant's refusal to consider her for the finance director position in 2011, which arose after she filed her 2009 lawsuit. *Id.* Thus, the Court found that the retaliation claim "arose from *events* that occurred after she filed her complaint" in the first lawsuit, which is why claim preclusion did not apply. *Id. (*emphasis added). In *Howard*, the Court focused on the *event* that created the retaliation claim—failing to consider the plaintiff for the finance director position. *Id.* Thus, the Court's reasoning in the *Howard* decision supports the Town's contention that claim preclusion bars this lawsuit, as the events giving rise to Barlow's termination arose before Barlow filed his 2020 lawsuit and have already been extensively litigated.

Here, the event leading to Barlow's termination was AZPOST's denial of his peace officer certification, which initially occurred in 2017. While the termination itself happened approximately five years after this denial, it is crucial to recognize that Plaintiff's termination is intrinsically and necessarily linked to AZPOST's decision as a matter of law. To be employed as a police officer in Arizona, obtaining AZPOST certification is a condition precedent. *See* A.R.S. § 41-1823(B). The condition failed once all of Barlow's appeals were exhausted, and he remained uncertified in Arizona. Consequently, the Marshal's Office could

20

not continue to employ Barlow as a police officer, as he could not legally be employed as a police officer in Arizona.

Claim preclusion aims to prevent vexatious litigants and conserve judicial resources. *Save Bull Trout*, 51 F.4th at 1107. This objective was achieved when the District Court dismissed this case, recognizing it as an attempt to relitigate an issue already decided by multiple judicial bodies. The Town supported Barlow throughout his certification and appeal process by keeping him employed in a limited capacity. However, after the Ninth Circuit upheld AZPOST's denial of certification and Barlow's 2020 lawsuit was dismissed with prejudice, the Marshal's Office had no choice but to terminate Barlow's employment. Therefore, Barlow's current lawsuit and his 2020 lawsuit are related to the same set of facts arising from the denial of his peace officer certification—satisfying the first element of claim preclusion.

> ii. **The remaining three factors related to an identity of claims further support the conclusion that claim preclusion bars this lawsuit.**

The "same transactional nucleus of facts" is "outcome determinative" here. *Mpoyo*, 430 F.3d at 988. It is the most important factor and is so strong in this case that the Court should find claim preclusion on that factor alone. Nonetheless, the other three less important factors that the Ninth Circuit considers also support the Town. These factors are: (1) whether rights or interests established in the prior

judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two lawsuits; and (3) whether the two lawsuits involve infringement of the same right. _Costantini_, 681 F.2d at 1201–02.

First, the rights or interests established in the prior judgment would be destroyed or impaired if this lawsuit continues because Barlow has already had a sufficient chance to litigate whether AZPOST's denial of his peace officer certification was wrongful. [ER_157–158 ("Plaintiff cannot seek relief on the premise that the denial [of his AZPOST certification] was wrongful.")] Once the Ninth Circuit affirmed the District Court's dismissal of Barlow's 2020 lawsuit, the Town terminated Barlow. Allowing this action to proceed would penalize the Town for terminating Barlow in reliance on a Ninth Circuit judgment. Thus, the Town's interests in the prior judgment would be destroyed and/or impaired.

Secondly, both actions rely on substantially the same evidence. A comparison of both complaints shows that they cover numerous identical topics: Barlow's employment with the Town; his application for AZPOST certification; AZPOST's denial of his certification; the appeal of his certification; and discrimination based on his perceived affiliation with the FLDS religion. [_Compare_ ER_49–58 _with_ ER_169–171] The only difference is that instead of AZPOST being the discriminatory entity (the 2020 lawsuit), Barlow is now

22

claiming that the Town had an unlawful motive to fire him based on his perceived affiliation with the FLDS religion, which was not supported by any plausible evidence in his Complaint. [*See* ER_12 (Barlow "alleg[ed] no facts to give rise to a plausible wrongful termination claim.")]

For instance, in both sets of litigation, Barlow alleged that the Town conducted an internal investigation into his background with regard to his AZPOST certification. [*See* ER_57–58, 130, 170 ¶ 32–33][4]  The Town included this investigation report as an exhibit to its Motion to Dismiss. [ER_130–132] Had Barlow's 2020 lawsuit been allowed to proceed, this report would have certainly been a key piece of evidence in the case.  This is one example among the many that illustrate both lawsuits rely on substantially the same evidence.

The final factor also weighs in favor of the Town, as both lawsuits involve the same right—the right to be free from discrimination in the workplace due to religion.  *See Prime Healthcare Servs., Inc. v. Servs. Emps. Int'l Union*, 97 F. Supp. 3d 1169, 1181 (S.D. Cal. 2015) (finding that two actions allege the infringement of the same right because "both actions arise from [plaintiff's] alleged right to operate its business free from Defendants' allegedly unlawful

---

[4] In the investigation report drafted by Chief Radley, he noted that Barlow acts "without bias *being an outsider* to the FLDS religion." [ER_132 (emphasis added)] Given Radley's expressed belief that Barlow was not a member of the FLDS religion, there is no plausible basis for claiming that Radley discriminated against Barlow based on his *perceived affiliation* with the FLDS religion.

disruptive activities."). Although AZPOST was not Barlow's employer, AZPOST

certification is necessary for police officers to be employed in Arizona. Thus,

AZPOST's actions impact Barlow's right to be free from discrimination in the

workplace. Therefore, both lawsuits involve the same right. In conclusion, there

is a clear identity of claims between Barlow's two lawsuits—a slight variation in

legal theories does not change that.

### B. A Final Judgment on the Merits Was Issued, and There Is Privity Between the Defendants in Barlow's 2020 Lawsuit and the Town.

Barlow does not dispute in his Opening Brief that a final judgment on the

merits was issued in Barlow's 2020 lawsuit. [*See, e.g.*, ER_13] By not addressing

the issue in his Opening Brief, he has forfeited his right to challenge the District

Court's finding that the second element of claim preclusion—a final judgment on

the merits—has been satisfied. [ER_13]; *Chadha v. JPMorgan Chase Bank, N.A.*,

749 F. App'x 636 (9th Cir. 2019) ("*See Fields v. Palmdale Sch. Dist.*, 427 F.3d

1197, 1203 n.6 (9th Cir. 2005) (concluding that, by failing to raise the issue in

their opening brief, the plaintiffs waived their challenge to the district court's

decision not to exercise supplemental jurisdiction over their remaining state law

claims); *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003)

("[W]e will not consider any claims that were not actually argued in appellant's

opening brief.")").

Instead, Barlow challenges the District Court's finding that the defendants

in the 2020 lawsuit (i.e., AZPOST and its members) and the Town are in privity with each other.  [O.B. at 15]  His arguments are unpersuasive.  The District Court correctly determined that the defendants in the 2020 lawsuit and the Town have a sufficient commonality of interest to establish privity. [ER_13–14]

Even when parties are not identical, defendants are in privity with each other when "there is substantial identity between parties, that is, when there is sufficient commonality of interest." *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 322 F.3d 1064, 1081 (9th Cir. 2003).  "One who is not a party of record may be bound [and establish privity] if [they] had a sufficient interest and participated in the prior action." *United States v. ITT Rayonier, Inc.*, 627 F.2d 996, 1003 (9th Cir. 1980); *Shaw v. Hahn*, 56 F.3d 1128, 1131–32 (9th Cir. 1995) (finding privity when the subsequent party's interests were shared with and adequately represented by a party in the former action).

Privity is a "flexible concept" that is dependent on the relationship between the parties in both sets of litigation. *Tahoe-Sierra Pres. Council, Inc.*, 322 F.3d at 1081–82; *ITT Rayonier*, 627 F. 2d at 1003 ("Courts are no longer bound by rigid definitions of parties or their privies for purposes of applying collateral estoppel or res judicata."). "[A] lesser degree of privity is required for a new defendant to benefit from claim preclusion than for a plaintiff to bind a new defendant in a later

action." *Mars, Inc. v. Nippon Conlux Kabushiki-Kaisha*, 58 F.3d 616, 619 (Fed. Cir. 1995).

The Town and the AZPOST defendants are in privity with each other due to their sufficient commonality of interest. The decision in *Lee v. Thornburg Mortg. Home Loans Inc.*, No. 14-CV-00602 NC, 2014 WL 4953966, at *6 (N.D. Cal. Sept. 29, 2014) is instructive. In *Lee*, the plaintiff initiated three separate lawsuits based on the same claims. *Id.* at 5. In the third lawsuit, some defendants were parties to one of the first two suits; however, a few defendants were new. *See id.* at 6. The Court found that all of the defendants were in privity with each other, including the new, because "[a]ll of the defendants were sued in connection with [plaintiff's] challenge to the validity of the deed of trust and the enforceability of the debt, based on substantially the same theory." *Id.* Thus, the Court held that the parties had a "sufficient commonality of interest to establish privity between the defendants in the prior federal actions and this case." *Id.*

Similar to the defendants in *Lee*, the defendants in Barlow's 2020 lawsuit and the Town were all sued in connection with AZPOST's denial of Barlow's peace officer certification based on substantially the same theory—discrimination based on his perceived affiliation with the FLDS religion. Therefore, the Town and the defendants in the 2020 lawsuit have a sufficient commonality of interest.

Barlow claims that the interests of the AZPOST defendants and the Town were adversarial. [O.B. at 16] Not so. In support of this theory, he argues that the Town's and AZPOST's interests were not aligned because AZPOST denied the Town the opportunity to seek a waiver of Barlow's three disqualifying events. [O.B. 15–16] The Town's inability to submit a waiver petition on Barlow's behalf does not mean that the Town was adversarial to AZPOST.

Individuals who have worked as police officers in another state can become certified by AZPOST quicker than traditional applicants through a waiver petition submitted by the officer's new employing agency.[5] However, to be eligible for a waiver, the officer must meet the minimum requirements to serve as a peace officer in Arizona.[6]

The Town requested that AZPOST excuse Barlow's three disqualifying events under the juvenile indiscretion exception, which AZPOST considered. _Barlow_, 2020 WL 1274507, at *1. However, AZPOST ultimately determined that Barlow did not meet the minimum requirements to serve as a peace officer because the juvenile indiscretion exception did not apply to the third disqualifying event— the sale of marijuana at 18 years old. [ER_108] This decision was upheld by an ALJ who concluded that "[b]ecause Mr. Barlow violated Ariz. Admin. Code

---

[5] _Waiver Process_, AZPOST, https://post.az.gov/certification/waiver-process (last visited July 24, 2024).
[6] _See id._

27

sections R13-4-109(A)(1) and (A)(7), the Board may, but is not required to, deny his application for certification." [ER_127]  Given that AZPOST determined that Barlow did not meet the minimum requirements, the Town could not move forward with a waiver petition.

The Town's involvement in Barlow's AZPOST application process was not adversarial simply because it was necessarily the agency required to submit a waiver petition on Barlow's behalf.  This was purely procedural.  The Town acted as a neutral party, serving as a liaison between Barlow and AZPOST.

In fact, the interests of the Town and AZPOST were aligned.  AZPOST functions to determine whether Arizona's future law enforcement officers are qualified for the positions they seek.  The Town has a vested interest in ensuring that its police officers are thoroughly vetted and qualified, as failing to do so could result in additional liability for the Town.  AZPOST possesses the necessary experience and expertise to make accurate fitness determinations, ensuring that only qualified individuals are certified.  It is essential that AZPOST, the agency responsible for assessing applicants' fitness for law enforcement roles, conducts a comprehensive evaluation.  For the Town, having an unqualified officer is far worse than having no officer at all.  Thus, the Town relies on AZPOST to make a well-reasoned and accurate determination if an officer is truly qualified.  Naturally,

the Town's interest in the prior litigation was not adversarial to AZPOST's interests.

Furthermore, the Town had sufficient interest in the outcome of the 2020 lawsuit because, as a matter of law, it is bound by AZPOST's decision to deny certification. Although the Town did not directly participate in the previous lawsuit, the outcome of the litigation directly affected its employee's certification status, and many of the Marshal's Office's actions were factually critical to Barlow's lawsuit. Indeed, the Marshal's Office is consistently mentioned throughout Barlow's 2020 Complaint. In sum, the Town is facing legal action due to AZPOST's failure to certify Barlow, which was central to the prior lawsuit. Therefore, the District Court did not err when it found that AZPOST and Barlow were in privity with each other.

In this matter, all key elements of claim preclusion have been satisfied. Thus, the Court should uphold the District Court's determination that claim preclusion bars this lawsuit from proceeding.

## III. THIS COURT MAY ALSO AFFIRM THE DISTRICT COURT'S DISMISSAL ON ISSUE PRECLUSION GROUNDS.

Given that the District Court dismissed Barlow's complaint because of claim preclusion, it did not analyze whether issue preclusion applies. [ER_15] Issue preclusion (which the Town argued in its Motion to Dismiss) also bars this lawsuit

because Barlow has already litigated the central fact at issue in this matter before an administrative body and in court.

Issue preclusion, also known as collateral estoppel, bars the re-litigation of issues actually litigated in a previous lawsuit. *Germann v. Dep't of Lab.*, 206 F. App'x 662, 664 (9th Cir. 2006). Issue preclusion is appropriate if: (1) the parties had a full and fair opportunity to litigate the identical issue in a prior action; (2) the issue was actually litigated in the prior action; (3) the issue was decided by a final judgment, and (4) the party against whom issue preclusion is asserted was a party to that action. *See id.* Issue preclusion operates to bar "successive litigation of an issue of fact or law . . . whether or not the issue arises on the same or a different claim." *New Hampshire v. Maine*, 532 U.S. 742, 748–49 (2001); *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 147 (2015) ("In short, a losing litigant deserves no rematch after a defeat fairly suffered.") (citation omitted). A litigant who was not a party to a prior federal case can use issue preclusion "offensively in a new federal suit against the party who lost on the decided issue in the first case." *Allen v. McCurry*, 449 U.S. 90, 95 (1980).

In this case, all the requirements of issue preclusion have been met, thereby barring all of Barlow's claims against the Town. This is because all of Barlow's claims hinge on the issue of whether AZPOST legally denied Barlow's peace officer certification. This issue has been addressed in an administrative hearing

before an administrative law judge, at the Arizona Superior Court, the Arizona Court of Appeals, the District Court, and the Ninth Circuit. Barlow has had more than a full and fair opportunity to litigate the issue. Each judicial body found that AZPOST had a legal basis to deny Barlow certification. Thus, this issue can no longer be litigated and operates to bar successive litigation *arising from different claims* based on the same issue. *New Hampshire*, 532 U.S. at 748–49.

Barlow now argues that he was "wrongfully terminated" by his employer, a claim not brought in his 2020 lawsuit. The core of any wrongful termination claim is the allegation that an employee was terminated for an illegal reason. However, multiple courts have already determined that Barlow's failure to receive AZPOST certification *was not unlawful*. Since Barlow was legally unable to receive AZPOST certification, a mandatory requirement for employment as a police officer in Arizona, the Town could not continue to employ Barlow in that capacity. This lawsuit is merely another attempt to litigate an issue that has already been litigated multiple times. The Court should find that issue preclusion bars Barlow's complaint.

## IV. BARLOW HAS NOT ESTABLISHED THE MONELL LIABILITY STANDARD.

The District Court did not err in finding that Barlow cannot hold the Town liable for violations of Section 1983 because Barlow has not established *Monell* liability. In *Monell v. Department of Social Services*, the Supreme Court held that

a municipality generally may not be held liable for a § 1983 violation under a theory of *respondeat superior* for the actions of its subordinates. 436 U.S. 658 (1978). To hold the Town liable under *Monell*, Barlow must show that the Town acted pursuant to an official policy. *Id.* at 691. This requires Barlow to demonstrate that (1) the unconstitutional act was committed pursuant to a formal governmental policy or longstanding practice or custom, or (2) the violation was committed or ratified by an official with final policy-making authority. *Gordon v. Cnty. of Orange*, 6 F.4th 961, 973– 74 (9th Cir. 2021). Allegations of isolated or sporadic incidents are insufficient to establish a policy or custom. *Id.* at 974. To successfully plead a *Monell* claim, the allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012). Barlow did not and cannot plausibly allege that the Town has a custom or policy to get rid of employees affiliated with the FLDS religion or that the termination decision maker, Police Chief Robbins Radley ("Chief Radley"), had final policy-making authority.

### A. The Town Does Not Have a Custom or Policy for Terminating Employees Who are Members of the FLDS Religion.

The District Court correctly determined that Barlow failed to demonstrate that the Town has a policy or custom of discrimination against members of the

FLDS religion because Barlow asserted conclusory allegations in his Complaint that were not supported by any plausible evidence.

To defeat a Motion to Dismiss, Barlow was required to plead an official policy or custom theory by (1) identifying the challenged policy; (2) explaining the policy's deficiency; (3) explaining how the policy caused the plaintiff harm; and (4) explaining how the policy amounted to deliberate indifference. *See Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011). In Barlow's Complaint, he claimed that the Town has "a custom and policy to purposefully deny certification and terminate employees who are, or have been, affiliated with the FLDS religion."[7] [ER_174] The courts do not accept this type of conclusory allegation. *See AE ex rel. Hernandez*, 666 F.3d at 637. Barlow did not identify a specific policy or custom of the Town or address the other necessary considerations to establish the existence of such a policy or custom. [ER_10] Thus, the District Court did not err in finding that Barlow did not adequately plead a policy or custom of discrimination. [*Id.*]

In Barlow's Response to the Town's Motion to Dismiss, he attempted to rescue his claim by citing two news articles allegedly explaining how the Marshal's Office has no ties to the FLDS religion. [ER_39] As an initial matter,

---

[7] As noted in Barlow's Opening Brief, only AZPOST holds the authority to deny certification. [O.B. at 12] Thus, The Town could not have purposefully denied Barlow's certification.

these news articles constitute extrinsic evidence, which is not permissible for the court's consideration. *See In re Dual-Deck Video Cassette Recorder Litig.*, No. CIV 87-987 PHX RCB, 1990 WL 126500, at *3 (D. Ariz. July 25, 1990) (stating that newspaper articles are "by their very nature hearsay evidence" and cannot be used to prove the existence of a conspiracy); *Lavinia Aircraft Leasing, LLC v. Piper Aircraft Inc.*, No. CV-16-02849-PHX-DGC, 2017 WL 1326140, at *3 (D. Ariz. Apr. 11, 2017) (explaining how the trial court may only consider admissible evidence when ruling on a motion to dismiss).

Furthermore, and of importance, the newspaper articles Barlow cites do not support a plausible claim for the existence of a policy or custom of discrimination against FLDS members. [ER_70] The articles actually contain information on discrimination against **non-FLDS members**, contradicting Barlow's argument that he is being discriminated against for being affiliated with the FLDS religion. [ER_80–81]

The second article Barlow attached to his Response discusses a case, *United States v. Town of Colorado City, Arizona*, which Barlow references in his Opening Brief. [O.B. at 19; No. 3:12-CV-8123-HRH, 2017 WL 1384353, at *1 (D. Ariz. Apr. 18, 2017)] This case concerned discrimination by the Town against individuals **who are not members of the FLDS religion**. 2017 WL 1384353, at *2, 9–10. Therefore, this case and the articles do not provide any evidence to

support a policy or custom of discrimination against **members of the FLDS religion**.  Additionally, one of the articles includes a statement from an attorney asserting that supervisors in the Marshal's Office have no ties to the FLDS. [ER_78]  This single, double-hearsay statement cannot establish a policy or custom of discrimination.  *See Gordon,* 6 F.4th at 974 (isolated incidents do not establish policy or custom).  Furthermore, the fact that supervisors in the Marshal's Office allegedly have no ties to the FLDS religion is simply an alleged factual observation, not evidence of discriminatory practices.  Barlow did not and cannot plead any plausible evidence that the Town engaged in a policy or custom of discriminating against members of the FLDS religion.

### B. Neither Chief Radley Nor Any Other Town Official Is a Final Policymaker; that Authority Resides Solely with Town Council.

Another way to establish municipal liability for a Section 1983 violation is to demonstrate that the termination decisionmaker, in this case, Chief Radley, qualifies as a final policymaker.  However, Barlow cannot present a plausible *Monell* claim against the Town.  Neither Chief Radley nor any other Town executive is a final policymaker; only the Town Council holds that authority.

In the context of municipal liability, to qualify as a final policymaker, an individual must have the authority to develop personnel policies or make decisions

free from meaningful constraints. *See Gillette v. City of Eugene*, 979 F.2d 1342,

1349 (9th Cir. 1992). As the Ninth Circuit has explained:

> Municipal liability does not attach. . . unless the decisionmaker
> possesses final authority to establish municipal policy with respect to
> the action ordered. The fact that a particular official – even a policy-
> making official – has discretion in the exercise of particular functions
> does not, without more, give rise to municipal liability based on an
> exercise of that discretion.

*Id.* (internal quotations omitted).

Barlow alleges that Chief Radley has final policymaking authority because

he has the power to hire and fire Town police officers. [O.B. at 17] However,

Barlow's argument incorrectly conflates "final policymaking" with "final decision-

making." If simply having final decision-making authority could create municipal

liability under § 1983, it would be tantamount to *respondeat superior*, which the

courts have consistently rejected. *See Monell*, 436 U.S. at 691. Under Barlow's

rationale, a municipality would always be responsible under § 1983 as long as

someone with final decision-making authority made an employment decision—

which occurs every time, effectively obliterating the *Monell* standard. This

underscores the purpose of *Monell*, which made clear that although there are

instances when *respondeat superior* liability is appropriate against a municipality,

it is not appropriate for *constitutional* claims. *See id.*

The only entity with final policy-making authority for the Town is the Town

Council. [ER_164 ("The Police Department shall be operated and managed in

accordance with such departmental rules and regulations as may from time to time **be adopted by the Council**.") (emphasis added)]  Barlow has not disputed, nor can he dispute, that the Town Council holds the sole authority to enact departmental and personnel rules affecting all employees, including members of the Marshal's Office.  Thus, any decisions made by Chief Radley were constrained by policies created by the Town Council, not himself.[8]  Therefore, he is not a final policymaker for the purposes of *Monell*. _Gillette, 979 F.2d 1342, 1349_ (granting judgment in favor of the city because the fire chief who made the termination decision did not have authority to establish policies).

Barlow makes a one-line allegation that the Town "ratified" Chief Radley's termination decision. [O.B. at 6; ER_40]  However, Barlow has not presented any plausible argument to establish municipal liability based on this purported ratification.  As the Ninth Circuit has explained, it is not enough for a plaintiff to show that policymaker acquiesced to a subordinate's decision; instead, "[ratification] requires that an official policymaker make a deliberate choice from among various alternatives to follow a particular course of action." _Gillette, 979 F.2d at 1348_.  "Likewise, [Section 1983] requires that a policymaker approve a subordinate's decision and *the basis for it* before the policymaker will be deemed

---

[8] Barlow even claims in his Complaint that Chief Radley terminated Barlow without the Town Council's knowledge. [ER_39]

to have ratified the subordinate's discretionary decision." *Id.* Chief Radley reports to Town Council. [ER_102, 164] Thus, to prevail, Barlow would have to plead facts demonstrating that the Town Council made a conscious, affirmative decision to ratify Chief Radley's alleged decision to terminate Barlow's employment *for unconstitutional reasons*. He did not (and cannot) meet his burden.

The District Court did not err in finding that Barlow cannot satisfy the *Monell* liability standard.[9]

## V. THE DISTRICT COURT CORRECTLY DENIED BARLOW LEAVE TO AMEND.

The Ninth Circuit reviews a district court's denial of leave to amend for abuse of discretion. <u>Universal Mortg. Co. v. Prudential Ins. Co.</u>, 799 F.2d 458, 459 (9th Cir. 1986). A district court can deny a plaintiff leave to amend when the complaint could not be saved by an amendment. <u>Est. of Strickland v. Nevada Cnty.</u>, 69 F.4th 614, 623 (9th Cir. 2023), <u>cert. denied</u>, 144 S. Ct. 559 (2024).

Barlow's Complaint could not be remedied by adding new facts. AZPOST certification was a prerequisite for continued employment with the Town, as the Town could not continue to employ Barlow as a police officer with only Utah

---

[9] Barlow does not contest the District Court's finding that his claim under Section 1985(3) must be dismissed as "Section 1985(3) does not itself create a substantial right or independent cause of action." [ER_16] Therefore, the Court should accept the District Court's finding. *See* <u>Padgett v. Wright</u>, 587 F.3d 983, 985 n.2 (9th Cir. 2009).

POST certification.  No new allegations would alter this outcome.

Moreover, the District Court found that Barlow did not adequately plead a Title VII claim.  [ER_12]  Even if Barlow were to amend his Complaint to include a Title VII claim, his lawsuit must still be dismissed due to claim and issue preclusion, which bar his case from proceeding.

Finally, Barlow contends that the District Court did not permit him to amend his Complaint to include additional facts about how the Town was not required to terminate him. [O.B. 20–21]  However, as previously discussed, no new facts can change this result.  Barlow presented two arguments in his Opening Brief to support his claim that he could have remained employed, but neither is availing.  As explained in Section I of this Answering Brief, these allegations fail to demonstrate that the Town could retain him as a police officer. [*See supra* pgs. 12–16]  This is not surprising, given that Barlow could not serve as a police officer in Arizona, and his job required policing in Arizona.  Therefore, Barlow could not continue his role with the Marshal's Office.  The District Court did not err in denying Barlow leave to amend his Complaint.

## **CONCLUSION**

Barlow's continued employment with the Town was always conditioned upon receiving AZPOST certification.  The Town allowed him to remain employed in a limited capacity while he appealed AZPOST's denial through every

judicial body in Arizona, a process that took many years. Once Barlow exhausted all appeal opportunities, the only course of action was to terminate Barlow's employment due to his failure to receive Arizona peace office certification.

The Town legally dismissed Barlow after his AZPOST certification was rejected and all appeals had been exhausted. The Town could, therefore, not employ him as a law enforcement officer in Arizona. This lawsuit hinges on that fact, which has already been litigated ad nauseum. While Barlow's termination occurred after the 2020 lawsuit, the event that triggered the termination—the denial of Barlow's certification—did not. The Town respectfully requests that this Court affirm the District Court's dismissal of Barlow's Complaint.

## STATEMENT OF RELATED CASES

Pursuant to Ninth Circuit Rule 28-2.6, the Town states that it is not aware of any cases related to the case pending in this Court.

DATED this 23rd day of August 2024.


**PIERCE COLEMAN PLLC**

By: s/ Justin S. Pierce
  Justin S. Pierce
  Alexandra N. Cayton
  7730 E. Greenway Rd., Ste. 105
  Scottsdale, AZ 85260
  *Attorneys for Defendant-Appellee*

## <u>CERTIFICATE OF COMPLIANCE</u>

### 9th CIR. CASE NUMBER 24-3118

I am the attorney for Defendant-Appellee.

This brief contains 9,249 words, excluding the items exempted by FRAP 32(f).  The brief's size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief complies with the word limit of Cir. R. 32-1.


s/ Justin S. Pierce                                            August 23, 2024    
Justin S. Pierce

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on [August 23, 2024], I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature:    <u>s/ Justin S. Pierce      </u>
Justin S. Pierce